**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0004n.06

**No. 12-4197**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 06, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| AMERICAN BONDING COMPANY, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| AMERICAN CONTRACTORS INDEMNITY | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: ROGERS, STRANCH, and DONALD, Circuit Judges.

ROGERS, Circuit Judge. American Bonding Company, Inc. (ABC) appeals the district court's grant of summary judgment on its breach of trust claim against American Contractors Indemnity Corporation (ACIC). The district court erred in granting summary judgment on the claim because it incorrectly held that ABC consented to ACIC's use of funds in a trust account for certain purposes.

ABC is in the business of writing bail bonds for criminal defendants in Ohio. To write a bail bond in Ohio, a bondsman must be a licensed Ohio insurance company and obtain a "surety bail bond license." Since ABC is not an insurance company, it cannot obtain the required license and can only issue bonds by acting as an agent of a licensed insurer. To that end, ABC entered into an Agency Agreement with Roche Surety, Inc. Roche did not issue the bonds either—rather, Roche acted as a middleman and paired ABC with ACIC, a surety company that actually issued the bonds.

Thus the arrangement between the companies worked as follows: ACIC provided the bonds and sent them to Roche. Roche then distributed the bonds to ABC, who issued the bonds to secure the release of criminal defendants.

Companies in the bail bond business have a financial incentive to make sure that criminal defendants appear at any relevant proceedings. If the defendant misses a proceeding, then a court can enter a judgment against the bondsman or its surety for forfeiture of the bail bond. But a court must give the relevant company an opportunity to show cause why a judgment should not be entered against it. One way to show cause is to produce the criminal defendant within a certain number of days. Even after judgment is entered, the bondsman or surety can obtain a total or partial remission of the forfeiture if one of them eventually produces the defendant.

Given the unpredictable nature of the bail bond business and criminal defendants' propensity for skipping bail, sureties like ACIC insulate themselves from unexpected losses stemming from forfeitures by establishing trust accounts that contain "build-up funds." If a court enters a forfeiture judgment against a surety, it can pay the judgment out of the account. This appeal centers on one such account.

The 2002 Agency Agreement between Roche and ABC required ABC to deposit 1% of the face value of each bond it wrote into a build-up funds account. The account was held in trust by ACIC for ABC as the beneficiary. According to the Agreement, the funds in the account were "immediately drawable by [ACIC] at the time and in the amount of any losses as defined herein." "Losses" and "loss" were in turn defined as follows:

Notwithstanding any provisions of law, use, custom, or practice to the contrary, for the purposes of this Agreement, the terms "loss" and "losses" as to [Roche] and [ACIC] shall include potential losses, and shall instantly be created and exist at the time when any person who is at liberty under a bail bond written by, through, or with [ABC] shall fail to appear as scheduled or announced, ordered, or recorded, and regardless of whether any judgment thereupon is rendered. [ABC] shall use [its] best effort to avoid any and all estreatures or forfeitures and shall in all instances pay from his own resources the penal sum of bail bonds issued and estreated in accordance with Ohio Statutes so that no judgment is entered against [Roche] or [ACIC].

ABC went on to write over a million dollars of bail bonds in the years following the execution of the Agreement. But in July 2005, Roche learned that ABC had breached the Agreement "by failing to remit to Roche all premium amounts owed for bail bonds written, transfer bond payments, bond forfeitures, and for missing or unreported bonds." In response to this breach, Roche terminated its contract with ABC. Soon after, Roche sued ABC in Florida state court. ABC removed the matter to federal district court and alleged various counterclaims. On March 2, 2009, Roche won a judgment against ABC on its breach of contract claim, and obtained summary judgment in its favor on some of ABC's counterclaims. But before damages were fixed, ABC declared bankruptcy. Thereafter ABC and Roche entered into an Agreed Order that fixed damages at $350,000 and dismissed ABC's remaining counterclaims. While the litigation between Roche and ABC unfolded, ACIC apparently began taking money out of the build-up account. At this point, it is unclear exactly how the money was used or how much was taken from the build-up account, but it is ACIC's position that it could use the funds in the account to cover any damages caused by ABC's breach of the Agreement.

This case originated as an adversary proceeding initiated by ABC in the U.S. Bankruptcy Court for the Southern District of Ohio. ABC asserted fifteen claims against ACIC. Count Five alleged that ACIC withdrew funds from the build-up account for improper purposes and failed to credit the account when it obtained remission payments. According to ABC, these actions constituted a breach of ACIC's duties as trustee of the account. Count Fifteen alleged a similar breach of trust theory, but was related to funds that remain in the account today rather than those that were taken out. ACIC responded by counterclaiming for a declaratory judgment that ABC's claims were barred by claim preclusion because of the Florida litigation between Roche and ABC. In January 2012, ACIC moved for summary judgment on ABC's fifteen claims and its counterclaim for a declaratory judgment. In July, ABC moved to dismiss ACIC's counterclaim, and ACIC filed a motion for leave to file an amended answer to ABC's complaint. Finally, on July 30, the parties stipulated to the dismissal with prejudice of most of ABC's claims—although not Counts Five and Fifteen.

Thus the district court had four motions before it: ACIC's motion for summary judgment on the rest of ABC's substantive claims, ACIC's motion for summary judgment on its counterclaim for a declaratory judgment, ABC's motion to dismiss ACIC's counterclaim, and ACIC's motion to file an amended answer to ABC's complaint. The district court disposed of these motions by granting ACIC's motion for summary judgment on ABC's substantive claims and dismissed the other motions as moot. The district court granted summary judgment on the breach of trust claims because it concluded that ABC had consented to ACIC's use of the funds in the account to cover any

damages or expenses ACIC incurred in the Agreement. According to the court, that consent absolved ACIC of liability because a trustee cannot be liable for breach of trust if the beneficiary consented to the conduct that supposedly constituted the breach. *See* Ohio Rev. Code Ann. § 5810.09. ABC appealed the grant of summary judgment on claims Five and Fifteen. ABC's position is that the district court gave the Agreement an overly broad reading and that the build-up funds can only be used to cover losses related to forfeitures. The issue in this appeal thus boils down to the following: Was ACIC allowed to use the money in the build-up account to cover any damages or expenses that it incurred as a result of ABC's breach, or could the funds only be used to cover damages related to forfeitures? ABC's reading of the Agreement is more compelling: the funds in the account can only be used to cover losses related to forfeitures.

The definition of loss and losses in the Agreement refers to losses stemming from forfeitures. The Agreement permitted ACIC to immediately draw from the account "at the time and in the amount of any losses *as defined herein*." (Emphasis added.) Thus funds from the account could only be used to cover losses as defined by the Agreement. Paragraph 18 of the Agreement defined loss and losses, and it explained that losses "are created and exist" when "any person who is at liberty under a bail bond . . . shall fail to appear as scheduled . . . regardless of whether any judgment thereupon is rendered." This language clearly refers to the losses that ACIC might suffer due to a forfeiture action that was initiated because a criminal defendant failed to appear. Accordingly, under the Agreement, the terms "loss" and "losses" refer only to expenses or costs that arise out of a forfeiture action.

The fact that Paragraph 18 states that the term "losses" includes "potential losses" does not expand the definition to include any and all damages that ACIC might experience. Paragraph 18 does not explicitly define "potential" or "potential loss." Rather, "potential" modifies the term "loss," which is subsequently defined in the rest of the paragraph. The inclusion of the word "potential" does not mean that the rest of the language in Paragraph 18 should be ignored. Rather, the phrase "potential loss" on its face means losses that have not actually occurred at the time a criminal defendant fails to appear at a hearing. At the instant a defendant fails to appear, the surety has not suffered any actual monetary loss; it merely faces the potential threat of the court's bringing a forfeiture action. Paragraph 18 also states that a loss occurs "regardless of whether any judgment thereupon is rendered." This language clearly contemplates a court's issuing a forfeiture judgment. Thus the inclusion of these clauses and the phrase "potential loss" makes clear that a surety need not wait until a judgment is actually rendered to draw from the build-up account to cover losses stemming from forfeitures. Read in the context of the rest of Paragraph 18, the phrase "potential loss" is most naturally read to refer to costs and expenses stemming from forfeitures.

This reading is supported by the second sentence in Paragraph 18. That sentence requires ABC to "use [its] best effort to avoid any and all estreatures or forfeitures and . . . in all instances[to] pay from [its] own resources the penal sum of bail bonds issued and estreated . . . so that no judgment is entered against [Roche or ACIC]." The close proximity of this requirement to the definition of loss provides additional evidence that the purpose of the build-up funds was to protect ACIC from losses stemming from forfeitures and not other types of losses.

By contrast, it would be unnatural to read the language of Paragraph 18 to include other types of damages— for example the non-payment of premiums. Losses or potential losses stemming from the non-payment of premiums would have no relation to whether or not a criminal defendant "fails to appear as scheduled." Rather, those losses would accrue on the date the premium payment was due. Thus, ABC did not agree to allow ACIC to draw from the account to cover any type of loss. The terms of the Agreement only permit ACIC to draw from the account to cover losses resulting from forfeitures.

ACIC responds that this narrow interpretation would create absurd results. It argues that "American Bonding could fail to hold the required 1% of the total liability in reserves and issue bail bonds resulting in excess contingent liabilities so long as the Court did not order forfeitures against ACIC," thus resulting in neither Roche nor ACIC being adequately protected. But that failure would itself be a breach of the Agreement. If one of the companies learned that ABC stopped complying with the requirements of the Agreement, presumably Roche could require ABC to remedy its breach or terminate the Agreement and sue for damages (if any). The Agreement creates the account to protect Roche and ACIC from a particular risk that is inherent in the bail bond business—criminal defendants' skipping bail. It is entirely rational to read the Agreement as limiting the build-up funds to that particular risk and not the garden-variety risk of a party's breaching the contract.

Thus, Ohio Revised Code § 5810.09 bars ABC's breach of trust claim to the extent that ACIC used the funds in the build-up account to offset the losses it faced as a result of forfeitures or potential forfeitures. But at this point in the litigation, it is unclear how ACIC used the funds. Thus

ACIC has not met its burden on summary judgment: there remains a genuine issue of material fact as to whether ACIC in fact used the funds in the build-up account for the purpose permitted by the Agreement—offsetting losses stemming from forfeitures. Accordingly, summary judgment was not warranted on Count Five.

The district court also should not have granted summary judgment on Count Fifteen for the same reasons it should not have granted the motion on Count Five. The district court properly determined that Count Fifteen amounts to a claim for breach of trust. Count Fifteen alleged that ACIC wrongfully retained approximately $28,000 that remains in the build-up account. To remedy this wrong, ABC asked the district court "to act pursuant to Ohio Revised Code § 5810.01(B)(5) . . . to immediately deliver the balance of the trust fund account to the Clerk of this Court." Section 5810.01 includes forms of relief that can be granted to remedy a breach of trust. Thus Count Fifteen merely asks for an additional remedy in response to ACIC's alleged breach of trust. Count Five is different from Count Fifteen because Count Five remedies damages caused by *the removal* of funds from the build-up account while Count Fifteen asks the court to transfer the funds that *remain in* the account today. But both Count Five and Fifteen alleged a breach of trust.

We leave to the district court to resolve in the first instance whether claim preclusion bars ABC's claims. We similarly leave to the district court to resolve in the first instance whether ACIC acted "in reasonable reliance on the terms of the trust" and thus is shielded from liability for a breach of trust action pursuant to Ohio Revised Code § 5810.06. The district court did not address either of these arguments.

For the foregoing reasons, the district court's grant of summary judgment on Counts Five and Fifteen is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.